Good morning. My name is Judy Snyder. I guess I should wait a little bit. A little chaos still in the background. Does that podium go up and down? I'm told it does. Yeah? Yeah, if I can find... Oh, that's up. There you go. Yeah. At five foot two and shrinking, that's probably a good idea. Okay. I think we're ready. Good morning. I'm Judy Snyder, and I'm the attorney for the appellant, Jennifer Bacon. And I cannot think of a more different case that you're about to decide with Ms. Bacon's appeal than what you just heard. Ms. Bacon worked for a period of over five years for the State of Oregon Department of Human Services as a child protective service worker investigating abuse and neglect claims and charges involving children, the most vulnerable of the citizens of our state. In the last 18 months of her employment, she was moved into the Beaverton office. And in that office, she worked with coworkers who she realized were not accurately reporting the work they were doing. In fact, they were creating false statements in the record representing that they had done work on abuse and neglect charges that they had not actually performed. We pretty much have a good understanding of the factual record. Okay. Good. I'd like to hear why the district court, and I guess this was a magistrate judge, erred. Yeah. Why there should be reversal of anything. I appreciate focusing on that because there are two issues that we're asking the court to reverse on and remand for a new trial. The first is the court's decision on summary judgment to dismiss the second claim for relief, which was for Oregon family leave retaliation, often thought of as interference in the federal law. Did she actually dismiss it? Yes, she dismissed it on summary judgment. She refused to permit us to go forward on the OFLA retaliation claim. I thought she said it just hadn't been alleged. Well, it resulted in our ‑‑ if you look at the complaint, it was alleged, Your Honor. You look at the complaint, which ‑‑ Trust me, we've looked at the complaint. You looked at the complaint, and it says OFLA retaliation. We took over the case. Did you write this complaint, by the way? Oh, no. No. No, no, no, no, no. We took it over just as summary judgment was being filed. This is a Gray C complaint, no question. It's not a model complaint. It does say on the second claim for relief OFLA retaliation, and it cites to the state chapter, Chapter 659A, which provides for OFLA retaliation claims. The attorney who drafted the complaint did not say 659A.183, which is the proper statute. The ruling doesn't require such specificity. It does not. It does not. And in the complaint, and we've cited in the record to the number of paragraphs within the complaint in which counsel articulated the facts which support the OFLA retaliation claim, starting with paragraph 20. Paragraph 20 was in the first claim for relief, but it was incorporated by reference. So there is absolutely, in our view, no doubt that the OFLA claim, however awkwardly it may have been presented, was presented in that complaint, was preserved, and that it is a crucial part of the claim, which with it being, with the motion for summary judgment being granted on that claim, effectively gutted the majority of the plaintiff's claim. As a matter of fact, the defense had been very clear in all of their briefing that if the only claim that the plaintiff had was a whistleblower claim arising out of conduct in August of 2016 to support a November 2017 termination, that the passage of time alone would make it extremely difficult for the plaintiff to prevail. And that proved to be true. Once we lost the OFLA retaliation claim, once the jury was not directed to the fact that each time the plaintiff took a family leave, each occasion was met with her supervisor either talking to human resources about initiating a fact-finding or, in fact, following her last two medical leaves, actually initiating a fact-finding. Let me ask you this. At trial, was there any mention of OFLA? No. The court didn't instruct on it? No, sir. Clearly there was evidence that she was out of the office on medical leave because it was during that time period that her supervisor not only did not direct anyone of her colleagues to take care of her caseload, but also it was during that time period, even when she was on leave, that she was getting calls on her caseload. So we talked about what happened during that time period. But, no, OFLA was not mentioned as a claim for relief or anything for the jury to consider in terms of the retaliatory behavior. Can I ask you a question about an OFLA claim? If you did something and I want to retaliate against you, say, and I do it through messing with your use of leave, right, but I'm doing it because of your whistleblowing, right, is that an OFLA violation or is that a whistleblowing? Or is it both? And the reason you probably understand why I'm asking is both in that when I read the complaint, it's not super clear to me whether or not you're saying that part of the way that or the complaint is saying that part of the way they were retaliating was by messing with her leave, right? There seems to be some overlap or maybe not. That's what I'm trying to get at. Is there an overlap between this and your whistleblowing claim? I would never suggest that they messed with her OFLA leave because they didn't. I think that your allegations are that they gave relief but they didn't provide coverage. What would your allegations be, I guess, on a standalone OFLA claim? What would your allegations be if this claim went back and you got to litigate it? Well, if we work from what we know happened, that at the time she went out on her first Oregon Family Leave Act for that surgery in December of 2016 into 2017, her supervisor did not meet with her in advance about reassigning her cases. She herself had to reach out to some of her colleagues to get assistance to get coverage. She received phone calls about some of her cases while she was out on leave. So all these things where they're not properly processing and allowing her leave. Yeah. It seems to me like built in was the idea that the motivation for that is that they're mad at her for whistleblowing, right? But now that you've already, unfortunately for you, lost that, right, at a trial. So all that's left is just whether they're standalone or whether they're – if somebody interferes with your leave in a way that's unlawful under the Oregon Family Leave Act, does it matter what the motivation for them interfering with it? Or do you have a claim just because they're interfering with it even if their motivation is, say, improper racial discrimination, which you could bring another claim for, right? But could you also have like an independent standalone claim just because they're improperly handling your leave? Let me unpack that. Yes, you can have both a retaliation because you engaged in earlier protected activity, as Ms. Bacon did, and also have an interference with OFLA leave based upon whether they're overlapping reasons by her supervisor for doing that or whether they are independent reasons. So they're separate claims. But they're separate claims, right. Okay. And now you would only be able to bring the latter claim that you – we're not really interested so much in the reasons why you did it, but we just know you did not process and handle my leave properly. Correct. And actually there is some evidence in the record as to why her supervisor might have otherwise been motivated to be disgusted with her for having taken all that leave. The organization clearly was at a point where they were overworked, underpaid, overworked. A lot of pressure was coming down on the supervisors to get the numbers up, get these cases closed, get these reports in, get these matters paperwork done, paperwork, paperwork, paperwork. But you can't turn off the tap. Let me ask you this. It's a version of what I think has already been asked, but I'm having trouble actually pinning it down. With respect to the Oregon Family Leave Act question, I'm looking at Paragraph 30 in the complaint. In retaliation for plaintiff's use of protected leave, interfered with leave by requiring her to perform duties while on leave. And then in Paragraph 31, thereafter, Buckholtz engaged in protectful review to find a basis for terminating her employment and did terminate. Now, is the Family Leave Act complaint that you are trying to persuade us is preserved or is there in the complaint both that they asked her to do things while she was on leave and terminated her for taking leave, or is it only that they asked her to do things while she was on leave that they shouldn't have asked her to do? The way the complaint is drafted is as you have articulated it, where they ask her to do both. Where they ask her to do both. I would submit, Your Honor, that the fact that they failed to provide her with coverage to cover her caseload and that she ended up doing things while she was on leave really is evidence from which the jury can infer that they had an animus towards her for her use of protected leave. But, in fact, the most egregious of the events that occurred as a result of her use of protected leave was this drumbeat that was constantly going on in the background where she was being... Yeah, but I'm not sure... Here's my question. Okay. Try again. There are two possible claims that I think you may be making under the Family Leave Act. Number one is, while she's on leave, they ask her to do things that they shouldn't be asking, or after she comes back, they've piled up so there's not really been a leave. That's one. The other one is, they fire her because she's taken leave. Is the second one, fire her because she's taken leave, is that part of the complaint or not? Absolutely. And, as a matter of fact, I think that's where I was heading. That is the most egregious of the outcomes of her taking leave. So you think that's alleged in the complaint? Yes, and it's consistent with what was developed during discovery and well articulated during the summary judgment process. To prove your OFLA claim, what do you need to establish? That she was a qualified employee, that she took qualified leave, and that, as a result of that leave, she was treated differently. And, as a result of being treated differently, she experienced an event which would be considered to be. . . It was a result of that leave. So the odd thing is, is you have this retaliation claim that, unfortunately, you've lost on. . . So could, I mean, the state, the whistleblowing, the whistleblowing claim, not retaliation for OFLA. And so, you know, when they've been separated, could the state go now and say, No, it might have been for the, because they've already won. It might have been for, because we didn't like that she'd whistleblown. It's tough, because it has to be, she has to have been punished. It's not just that they messed with her leave, but that she has to have been punished for taking leave. Is that right? For taking leave. Yes, and I look forward to arguing that issue before the jury when you send it back, because I do think that, in fact, there is ample evidence that there is an independent basis for the retaliatory conduct that arises just from her use of OFLA leave. Oh, I was just going to say, I thought you only had to establish that it was a factor. Oh, correct. In the adverse action. Yeah, and if, in fact, I overstated it, it's because I feel that it was such a driving force. Okay. But it wasn't that I was trying to make the plaintiff's burden more difficult than it had to be. Okay, so we've got about two minutes left. I don't remember the amount of time that you wanted to reserve. I am here to answer your questions. Yeah, why don't we go ahead and have you reserve that time for rebuttal. Okay, thank you so much. I think the site works. Good morning. May it please the court and counsel, Patricia Rincon on behalf of defendants, the Oregon Department of Human Services, and Sonia Bugles. I guess I'd like to start with the first issue as to whether, you know, the claim that was ultimately dismissed by the court was adequately dismissed. And I think, to be clear, what transpired below at summary judgment and what I understood plaintiff's position to be was that she was alleging her OFLA claim was specifically about being terminated for having taken protected leave. So although there are very different ways you can raise a claim under OFLA or FEMLA, I think what we were talking about, at least as I understand the record, was specifically when asked and in her response in opposition to summary judgment, was this particular allegation that she was terminated because of using protected leave. So while there – that's what I understood the claim to be. So the question is, was that particular claim alleged in the complaint or otherwise did defendants otherwise have notice of that particular claim below? And defendant's position is that it did not. And, again, I think the question here is about fair notice, whether that comes from the complaint or whether that's developed through the litigation or, I think, as plaintiffs. Whoever argued it before the district court first kind of argued that this claim, any reference to OFLA, just overlapped with the other whistleblowing claim, and so therefore it was just duplicative and not really a claim, separate claim. And second, they complained about – they argued that, well, it's just too ambiguous, it's too incomplete to really allege an OFLA claim. That's correct. Rule 8, you have to construe the complaint in a fairly generous manner. That's true. You don't require technical pleading like in state court. And you look at the complaint to see if it alleges the essential elements of the claim. It does. Respectfully, defendants would disagree that the complaint alleges the type of – the claim that plaintiff alleged or contended, again, in response to the summary judgment motion that count 2, claim 2 was the one that encompassed this. Let me state the argument as cleanly as I can in favor of the other side, and then you tell me what's wrong. I'm looking at count 2. I'm on page 6 of the complaint. It's headed discrimination based on use of protected OFLA and reporting misconduct. But it's and, so we got very specifically based on use of protected OFLA, okay? Then we got paragraph 30, Sonja Buchholz in retaliation for use of protected leave interfered, paragraph 31. Thereafter, Buchholz engaged in protectual review to find a basis to terminate her employment. It sounds as though I can infer from that that the heading says this is an OFLA claim, there's been discrimination based on the interference with her use of it, and then pre-textual review, she gets canned. That sounds as though they're saying she's getting canned because she used leave. Well, and I think, you know, again, our position is that it's not so clear because when you look at, I think with the benefit of hindsight and the benefit of plaintiff when responding in an opposition that this is that count 2 claim 2 was what was raising it. But when you look at the overall complaint and the fact that these allegations are mixed in together, it's confusing as to what the nature of that claim is. You know, there is discrimination based on OFLA, but again, we defendants understood that to mean that that was part of the type of retaliatory conduct that stemmed from the whistleblowing. Well, but the word and is in there. And I noticed that the magistrate judge says that the wrong statutory section is cited and that there's a citation in the complaint to the whistleblower, but that's not right because the heading is sections 659A et sec, not specifying a particular subsection. Right. And I think that is in reference just sort of generally to that chapter. But again, I think the context of the complaint when you're looking at count 1 as well together, it seemed like count 1 and count 2 were very much similar and more specific to the particular defendants, whether it was against DHS or against, you know, defendant vocals specifically. So I think how the, you know, defendants read it and how the trial court interpret that was that, you know, these were sort of the same allegations. And again, the complaint is not very clear. So I think, you know, the fact that count 1 referenced 659A199 also saying et sequential, you know, was sort of similarly drafted as count 2, and I think that's where the confusion stemmed from. It was. Well, your argument is similarly drafted, but there's some really key differences. One is it doesn't actually cite 199, right? And so you'd say there's a difference. It's not citing 199. It's citing something different. Actually, it's a different heading that says discrimination based on use of protected OFLA. And in the passages that Judge Fletcher was referring to. So, I mean, it's not, yeah, it's not maybe as clear or as well drafted as, but, you know, it repeatedly says based on in retaliation for plaintiff's use of protected leave. You know, it seems to be tying it to the use of the leave as opposed to necessarily saying that they are discriminating against her in her use of her leave because they are retaliating for the whistleblowing. The language is in retaliation for the use of the leave. Right. And part of that, you know, reads that the retaliation, perhaps based on the use of protected leave, was, you know, requiring her to perform duties while on leave. Again, you know, that is different from saying you terminated me. Move on to paragraph 31. Right. And, again, that's sort of a broad allegation that wasn't so clear whether that was based on which of the conduct that was based on. But, you know, and even if the complaint is ambiguous or broad enough, and there were a lot of allegations in this complaint that were sort of generalized about pretty much most of the conduct that DHS engaged in after the initial whistleblowing, that that was somehow retaliatory. You know, again, the litigation process didn't really seem to narrow that down more specifically about this claim regarding, you know, you terminated me because of taking protected leave. If the complaint was ambiguous, and I think at the very least it is, in terms of what exactly is it that she's alleging the defendants did wrong, I'm not sure that the litigation, whether that was, you know, plaintiff points to, you know, the discovery or the summary judgment in terms of narrowing those issues down. And it's unclear what exactly that's based on in terms of, you know, again, me taking, you know, plaintiff saying, I took protective leave, and that was a negative factor. Maybe not the only factor, but a factor in my termination. And so it wasn't clear that that is what she had been trying to establish or that that's what defendants ultimately had to defend against. Unless the court has further questions on this first issue, I just want to touch base on the second issue, which is the sort of what we see as an evidentiary ruling on the exclusion of the Salinas report or the report of this internal complaint that plaintiff had filed. And, you know, again, the court at that point pre-trial was trying to determine whether this report was part of what the misconduct or that that was the protected activity for which the misconduct was based. She made the report. She complained to Salinas, right? Right. So Salinas was the one who investigated the report. Salinas undertook an investigation. Correct. Did a report. Right. So the question was whether that protective activity, that report, should come in at trial. And I think at that point the trial court was trying to understand, okay, again, there's been all these allegations about specific instances of protected conduct, whether, you know, in particular, we understood that to mean plaintiff's, you know, whistleblowing on her coworkers. And there were other complaints that plaintiff had made to her supervisor's supervisor, essentially. And so we were just trying to figure out what it was that was the basis of what protective activity was what DHS reportedly retaliated against. And so on that piece. But it was protected activity that she would have made the complaint. Salinas then investigates and finds that the complaint is groundless. But I think her argument is, I made the complaint, it was protected activity, and I'm being retaliated against for having made the complaint. Isn't that the substance of what she was arguing? I think that's the substance of what she sort of more clearly has identified on appeal. But I think the question below was whether she had, in fact, identified that complaint as one of the many protective activities she had engaged in. Identified it when? In a pretrial order? Or, I mean, you don't have to identify that in the complaint in order to introduce that as evidence. Well, I think the relevance of that became at issue in terms of if this is something that she was basing her claim on or not. And at least that's what I think the question was before. It kind of jumps out at you that that has to be part of the claim. She's being retaliated against for having complained. She complains, and this is her most recent complaint. Well, I think that was the question was that whether she was basing her sort of broad allegation of, you know, I engaged in protective activity, you know, whether that sort of broad allegation encompassed this latter. Well, why wouldn't it? I'm not – because it wasn't something that defendants were unnoticed, that she was particularly retaliated against for that particular report. I mean, again, we – No, not for the report, for the complaint that prompts the report. She's not retaliated against because of the report. She's retaliated against, at least her allegation is, because I made the complaint. Right, and I think I understand that to be her claim now, but the question was whether that was, in fact, what she had based her, you know, claim about retaliation for, because she engaged in various forms of protective activity. So the question was about narrowing which of those activities were actually – Did you take her deposition? Did I? Or – no. Did somebody take her deposition? I can't recall. A counsel may speak to that. But I believe there were – I think that there was a deposition of her. Did you send her some interrogatories and say, what are you complaining about? And I'm not sure that that was necessarily – again, if it was us, I'm not sure what, you know, the counsel has pointed to that record to indicate, you know, what it was that that came out. Sure. And I think the record here is a bit limited because it's limited to what was sort of, I think, put forward through the summary judgment record. So that whatever depositions and interrogatories were taken, not all of that is sort of available. Unless the Court has any other questions, yes, that you would like to offer. Thank you. Thank you, counsel. I think we'll hear from your bonus counsel. Thank you. On your rebuttal time. I'd like to just address that last issue that was raised about the Court's granting of motion limiting number nine, which prevented the plaintiff from raising any evidence with respect to the internal complaint of discrimination and retaliation she filed in July of 2017. To your point, Judge Paz, it was noted in the defendant's own answer to that complaint. In the answer to the complaint at paragraph 22, they allege plaintiff reported alleged discrimination and harassment, which was investigated by DHS's Office of Equity and Inclusion. So the reality of the event in terms of that report was well known to both parties at the pleading stage. Moreover, at the summary judgment stage, in defendant's own words in the motion for summary judgment, they state the record is replete with plaintiff engaging in protected activity several more times after whistleblowing in August of 2016. And in conjunction with that, they proffered evidence of her additional whistleblowing activities, including the fact that she submitted this internal complaint. You may be asking, why was the defense pointing out all the times she was engaged in protected activity? And that was because there was a First Amendment claim within the complaint, and they were attacking that First Amendment claim by saying, look at all the times she exercised her First Amendment rights. But it really did serve to demonstrate that they understood that those were part of her protected activities. Let's assume for a moment that we were to conclude that the trial judge improperly excluded the complaint that results in the Salinas report. Why is that reversible error? I assume you're saying she gets a new trial because of that. Why is that reversible error in the sense of that bad an error? It is our request, Your Honor, that it be reversed and sent back for retrial on that issue. My understanding is that when the court makes an evidentiary ruling, that that is only reviewed for abuse of discretion, but that there is, in fact, de novo review of a district court's determination as to whether the plaintiff's complaint complied with pleading standards to put the defendants on notice. And I would say the pleadings as a whole do demonstrate that the defendant knows this. My question is different. Okay. That I misunderstood you. Let's assume that we were to hold that it was erroneous to keep it out and it was an abuse of discretion to keep it out. Why is that error so harmful that it necessitates a new trial? Because as it was pointed out by the defense in their own briefing during the summary judgment stage, if the only evidence of protected activity was the August 2016 report of her co-worker's misconduct and she wasn't terminated until November of 2017, the temporal connection is very remote. And, in fact, the jury, therefore, was denied the opportunity to learn that she had made a formal internal complaint in July of 2017 and that days after she returned to work in August, she was submitted to ‑‑ she was forced to undergo a second fact finding, which was the fact finding that ultimately resulted in the termination of her employment. We couldn't argue that. So they were like, oh, gee, they're trying to get you to believe that they terminated her 14, 15 months after she made a complaint. It's like, no, she made other complaints, including one in July, literally days before she was submitted, subjected to her final fact finding. Thank you very much. Thank you, counsel. Thank you to both sides for your helpful arguments this morning. We have one additional case.
judges: FLETCHER, PAEZ, VANDYKE